530 new

FILED

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name _____ Le _____ Duy _____
          (Last)                    (First)

JUL - 9 2008

RICHARD W. WIEKING
(IN 1 billing)
U.S DISTRICT COURT
N. DISTR.

Prisoner Number __T-75196__

Institutional Address _Centinela State Prison, P.O.Box 921_
_Imperial, CA 92251_

============================================================

**E-filing**

UNITED STATES DISTRICT COURT

**SBA**

NORTHERN DISTRICT OF CALIFORNIA

_Duy Le_____
Full Name of Petitioner

Case No. **CV** **08** **3293**
(To be supplied by the Clerk,
United States District Court)

vs.

**(PR)**

_V. M Almager_____
Name of Respondent
(Warden or jailor)

PETITION FOR A WRIT OF HABEAS CORPUS

============================================================

## Read Comments Carefully Before Filling In

**When and Where to File**

    You should file in the Northern District if you were convicted
and sentenced in one of these counties: Alameda, Contra Costa, Del
Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito,
Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You
should also file in this district if you are challenging the manner in
which your sentence is being executed, such as loss of good time
credits, and you are confined in one of these counties. Habeas L.R.
2254-3(a).

    If you are challenging your conviction or sentence and you were
not convicted and sentenced in one of the above-named fifteen
counties, your petition will likely be transferred to the United
States District Court for the district in which the state court that
convicted and sentenced you is located. If you are challenging the
execution of your sentence and you are not in prison in one of these
counties, your petition will likely be transferred to the district
court for the district that includes the institution where you are
confined. Habeas L.R. 2254-3(b).

1

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A.  INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1.  What sentence are you challenging in this petition?

(a)  Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

*Santa Clara Superior Court,*      *San Jose,*
Court                                    Location

(b)  Case number, if known  *C1-117-0690*

(c)  Date and terms of sentence  *40 yrs to Life with possibility term*

(d)  Are you now in custody serving this term?  (Custody means being in jail, on parole or probation, etc.)  Yes  *✓*  No ____

Where?  *Centinela State Prison, P.O Box 921, Imperial CA 92251*
(Name of Institution)                          (Address)

2.  For what crime were you given this sentence?  (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known.  If you are challenging more than one sentence, you should file a different petition for each sentence.)

*Attempted murder: 664 (a)(1) 187.*

*Gang Enhancement: 186.22 (b)(1) and 12022.53 (d) and (e)(1)*

*Semi-automatic firearm: 245 (b).*

3.  Did you have any of the following?

Arraignment:  Yes  *✓*  No ____   Preliminary Hearing:  Yes  *✓*  No ____

Motion to Suppress:  Yes ____  No  *✓*

2

4.   How did you plead?

Guilty _____    Not Guilty _✓_    Nolo Contendere _____

Any other plea (specify) _____

5.   If you went to trial, what kind of trial did you have?

Jury _✓_    Judge alone _____    Judge alone on a transcript _____

6.   Did you testify at your trial?   Yes _✓_   No _____

7.   Did you have an attorney at the following proceedings:

(a)  Arraignment    Yes _✓_   No _____
(b)  Preliminary hearing    Yes _✓_   No _____
(c)  Time of plea    Yes _✓_   No _____
(d)  Trial    Yes _✓_   No _____
(e)  Sentencing    Yes _✓_   No _____
(f)  Appeal    Yes _✓_   No _____
(g)  Other post-conviction proceeding    Yes _____   No _✓_

8.   Did you appeal your conviction?    Yes _✓_   No _____

(a)  If you did, to what court(s) did you appeal?

1st time / 2nd time

Court of Appeal    Yes _✓_   No _____    3-20-04 / 2-29-08 Reversal / Denied
                                         (Year)          (Result)

2nd time

Supreme Court of
California    Yes _✓_   No _____    5-14-08    Denied
                                   (Year)     (Result)

Any other court    Yes _____   No _✓_    _____
                                         (Year)          (Result)

(b)  If you appealed, were the grounds the same as those that you are raising in this petition?   Yes _✓_   No _____

(c)  Was there an opinion?    Yes _____   No _✓_

(d)  Did you seek permission to file a late appeal under Rule 31(a)?    Yes _____   No _✓_

If you did, give the name of the court and the result:

_____

9.   Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?    Yes _____   No _✓_

3

Note:  If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition.  You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28 U.S.C. § 2244(b).

(a)  If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding.  Attach extra paper if you need more space.

I.    Name of Court _____

      Type of Proceeding _____

      Grounds raised (Be brief but specific):

      a.    _____

      b.    _____

      c.    _____

      d.    _____

      Result _____ Date of Result _____

II.   Name of Court _____

      Type of Proceeding _____

      Grounds raised (Be brief but specific):

      a.    _____

      b.    _____

      c.    _____

      d.    _____

      Result _____ Date of Result _____

III.  Name of Court _____

      Type of Proceeding _____

      Grounds raised (Be brief but specific):

      a.    _____

b. _____

c. _____

d. _____

Result _____    Date of Result _____

    (b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?    Yes _____    No ✓

_____
(Name and location of Court)

B.  GROUNDS FOR RELIEF

    State briefly every reason that you believe you are being confined unlawfully.  Give facts to support each claim.  For example, what legal right or privilege were you denied?  What happened?  Who made the error?  Avoid legal arguments with numerous case citations. Attach extra paper if you need more space.  Answer the same questions for each claim.

    Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent petitions may be dismissed without review on the merits.  28 U.S.C. § 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One: _The admission of the 2003 incident of on-going rivalry between AW and VN/VG was irrelevant._

Supporting Facts: _See attached (page 6)_

_____

_____

_____

Claim Two: _The March 1999 and January 2001 incidents did not meet the standards for admissibility pursuant to Evidence Code Section 1101(b) and were more prejudicial than probative._

Supporting Facts: _See attached (page 7-16)_

_"Part 1" General standards applicable to the admissibility of evidence pursuant to Evidence Code Section 1101(b), "Part 2" Evidence of prior acts not involving Petitioner were inadmissible under Evidence Code Section 1101(b) for intent, motive, premeditation and malice "Part 3" and "Part 4" and "Part 5"_

Claim Three: _The limiting instruction as to the other Crimes Evidence Was improper._

Supporting Facts: _See attached (page. 17-20)_
_See attached Claim Four (page. 21) "Ineffective Assistance of Counsel"_
_See attached Claim Five (page 21-22) "Prejudice"_

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

_Bloom v. Calderon (9th Cir. 1997) 132 F.3d 1267 / Johnson v. Baldwin (9th Cir. 1997) 114 F.3d 835_
_Chapman v. California (1997) 386 U.S. 18 / Estelle v. McGuire (1991) 502 U.S. 62_
_Strickland v. Washington (1984) 466 U.S. 668 / Schwendeman v. Wallenstein (9th Cir. 1992) 971_
_Luna v. Cambra (9th Cir. 2002) 306 F.3d 954 / Ulster County Court v. Allen (1979) 442 U.S. 140. (F.3d 313_

Do you have an attorney for this petition?   Yes _____   No _✓_
If you do, give the name and address of your attorney:

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on _6/10/08_                    _____
             Date                        Signature of Petitioner

(rev. 5/96)

6

"A"

<u>Attention</u>:

<u>United States District Court</u>
<u>Northern District of California.</u>

___ This Petition is as Copied from Petition for Review. Counsel appointed on direct appeal, Julie Schumer, ESG. SBN 82814, PMB 120 120 Village Square, Orinda. CA 94563. Minus Case Laws Except <u>People V. English</u> <u>Supra</u>.

___ Petition, <u>Duy Le</u>. Second Language is English (First or 1st Language Vietnamese.)

___ I declare under penalty of perjury that the foregoing is true and Correct. Executed June 10th, 2008 At Imperial, CA.

<u>Sincerely</u>.

Duy Le

<u>These were multiple Prejudiced
Errors with Respect to the admission
of the Prior acts evidence.</u>

The proceeding below.

Prior to trial the Court considered the admissibility of other Crimes evidence offered by the people to establish the elements of the gang enhancement as well as for intent, motive, premeditation and deliberation pursuant to Evidence Code Section 1101 (b).

Specifically, the prosecutor offered the following acts for various purpose, i.e. as predicate crimes for purposes of the Penal Code Section 186.22 (b)(1) enhancement, i.e. to establish the primary activities of a Criminal street gang and a pattern of Criminal gang activity [See Penal Code Section 186.22 (F) and (E), as evidence of ongoing Rivalry, or for intent, motive, premeditation and malice per Evidence Code Section 1101 (b):

1) May 26, 1997 home invasion robbery by Lac Tran. Lac Tran, an AW member and two others forced their way into a house, tied up the housekeeper, took electronics and fled in Stolen vehicles. (1 CT 77) "Exhibit A"

2) February 26, 1998 homicide. Nick Dang, a VN member and founder of VG, went with other member of VG and AG (Asian Gangsters) to a café that was a VG hangout. AG member told Dang that AW members were at another café. Dang and others drove in four vehicles to that café. One of Dang's companions had a gun, a fact known to Dang. At the café, Dang asked a carload of people if they were AW. The people in the car shot at Dang, hitting him in the leg and killing Dang's sured companion, Tan Nguyen. (1 CT 77) "Exhibit A"

3) March 25, 1999 Shooting. Petitioner and four other AW members were

drinking at a Vietnamese Café. Three other Vietnamese males came in and one of Petitioner's Companions, Vu Truong, recognized them as members of VN. They left and Truong tried to follow them. He fired two shots in the air as they drove away. When later questioned as to why he had fired the gun, Truong said he had to, as his friends knew he was armed, and he would lose face if he didn't shoot. He further said he would have shot the VN instead of firing into the air if he had had the chance because he was a gangster. (1 CT 72.) "Exhibit A"

4) August 11, 1999 shooting: Lac Tran and a number of other AW members went to a restaurant shortly after midnight. They sat at a table and were maddogged by another group of Vietnamese males. A fight followed. One of the members of the group maddogging Tran's group chased Tran's group out at knife point. Tran came back in with a gun and fired a shot in the restaurant. (1 CT 78.) "Exhibit A"

5) April 21, 2000 homicide. On that date, An Du Nguyen, a VG member and other VG members got into a fight with AW members at the Tish Café. During the fracas, Nguyen stabbed and killed Vu Pham, an AW member. (1 CT 78-79) "Exhibit A"

6) January 23, 2001 shooting: Viet Mai, an AW member was driving in a car with other AW members. They pulled up alongside a car which contained Truong Nguyen, a VG member and Nguyen's brother. A number of shot were fired from Mai's car, one of which hit Truong in the leg. Truong's brother told the police that AW wanted revenge on him because he had been involved in the incident described in paragraph 5, above, where an AW member had been killed. (1 CT 79) "Exhibit A"

7) December 17, 2003 murder of Nick Dang. On that date, AW members killed Dang and wounded his companion at a Vietnamese restaurant. The victims were

member of VN/VG. An unprovoked fight had broken out after the two different groups these had proposed toasts. Witnesses heard "AW" yelled out as the shooting happened. (1 CT 79-80.) "Exhibit A"

The prosecutor sought to admit the incidents described in paragraphs 1, 2, 3, 4, 6 as evidence of predicate acts and a pattern of gang activity for purposes of the gang enhancement as set forth in Penal Code Section 186.22.b(1), (e) and (F). He sought the admission of #7 as "the on-going nature of AW, which is one of the elements we have to prove that it's an on-going criminal street gang." (3 RT 21-26) "Exhibit A" He also requested that #'s 2, 3, 5, 6 and 7 be admitted as evidence of ongoing violent rivalry between AW and VG/VN for the basis of Det. Odimi's opinion as to same. He repeatedly stated he would prepare an appropriate limiting instruction as to the use of these bad acts. (3 RT 21-27.) "Exhibit A"

Defence Counsel objected on several grounds. He noted that the central issue of the case was Petitioner's identity as the shooter and urged that the prosecutor was "going overboard" in bringing in so many priors to try to prove gang rivalry. (3 RT 30.) "Exhibit A" He agreed that the expert, Det. Odama, could take all of these prior into account in formulating his opinions, "but to have him state every single one, I think the overall effect of that is going to be prejudicial and is going to deny Mr. Le his constitutional right to a fair trial." (3 RT 34.) "Exhibit A" He objected to the use of #7, which occurred in 2003, well after Petitioner was in custody in this case and no longer an active gang participant. (3 RT 34.) "Exhibit A"

The trial court found that each prior was "probative to the elements of the enhancement and here the people are required to prove." The

Court further found that the fact that the priors involved people other than Petitioner lessened the prejudice and any prejudice would be further lessened once the jury received the appropriate limiting instruction. (3RT 35.) "Exhibit A"

The Prosecutor also sought the admission of #3 and #6 for intent, motive, premeditation and malice under Evidence Code Section 1101(b). "Exhibit A" (3RT 35-37.) The Prosecutor argued said Crimes were admissible despite the fact that Petitioner did not commit them as he believed "it is necessary to understand the mind set of what it means to be an Asian Warrior gang member, and why an Asian Warrior gang member would fire without provocation against VN gang members." (3RT 36.) "Exhibit A" As to the March, 1999 incident in particular, the prosecutor urged that Vu Truong's statement that he had to shoot or lose face was relevant "for this jury to consider when looking into the reason why the Defendant, as an Asian Warrior gang member, would do this conduct." (3RT 37.) "Exhibit A" As to the January, 2001 shooting, the prosecutor claimed that Viet Mai committed it to avenge the earlier killing in 2000 of his friend, and that that there was such a motivation for that shooting was evidence of intent in the current Crime. (3RT 37.) "Exhibit A"

Defendant Counsel objected that the 1999 and 2001 offenses were not sufficiently similar to the current Crime to be admissible per Evidence Code Section 1101(b) and also that they should be excluded pursuant to Evidence Code Section 352. (3RT 43-44.) "Exhibit A"

The trial Court found the two prior sufficiently similar "to support the inference that the Defendant had the requisite intent, motive, malice and premeditation" and thus admissible. The Court further found

the probative value of these incidents outweighed their prejudicial effect. (3 RT 45.) "Exhibit A"

Petitioner Contends the trial Court's rulings with respect to the prior bad acts evidence amount to prejudicial error as the admission of Certain portions of the Prior Crimes gang evidence was an abuse of discretion.

Ground One:

### The admission of the 2003 incident of On-going Rivalry between AW and VN/VG Was irrelevant.

The 2003 incident involving the killing of Nick Dang by AW members was clearly irrelevant. "Relevant Evidence" means testimony or physical objects, including evidence bearing on the credibity of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of Consequence to the determination of the action. (Evidence Code Section 210) Evidence which produces only speculative inferences is irrelevant evidence which a court had no discretion to admit. Trial Court abuse its discretion in admitting irrelevant evidence when it can be shown under all the circumstances it exceeded the bounds of reason.

The 2003 incident took place well over two years <u>after</u> the incident which is the subject of this appeal took place. Moreover, Petitioner was not involved and was in fact in custody, making his active participant as a gang member difficult if not impossible. Further, the prosecution was not required to prove the on-going nature of the gang past the time Commission of the instant offenses. Said fact was irrelevant as what was at issue was the status quo at the time of the offense. For this reason, the Court of appeal's argument that the 2003 incident was necessary to show that the gang was ongoing past the time Commission of the offense is unavailing. These factors render the incident irrelevant for the purpose for which it was admitted and thus improperly admitted.

Ground Two:

The March, 1999 and January 2001 incidents did not meet the standards for admissibility pursuant to Evidence Code Section 1101(b) and were more prejudicial than probative

part 1.   General standards applicable to the admissibility of evidence pursuant to Evidence Code Section 1101(b).

Evidence Code Section 1101(a) prohibits the admission of evidence of a person's character, including instances of charged and uncharged misconduct, to prove that person's conduct on a particular occasion or to prove he or she has a propensity to commit crime in general. Evidence Code Section 1101(b) allows such evidence to be admitted if relevant to prove some relevant fact other than a disposition to commit the act, specifically motive, opportunity, intent, preparation, plan, knowledge, identity or absence of a mistake or accident. Because of its inherently prejudicial nature, evidence of other crimes must be excluded if not relevant to an issue expressly in dispute or if it is more prejudicial than probative under all the circumstances.

The admissibility of other crimes evidence is strictly limited by Evidence Code Section 352 which mandates the exclusion of evidence the probative value of which is substantially outweighed by its prejudicial impact. In order to meet the relevancy requirement of Evidence Code Section 1101(b) and pass the balancing test of Evidence Code Section 352, the probative value of such evidence must be substantial on theory under which it is tendered.

Part 2.    <u>Evidence of prior acts not involving Petitioner</u>
<u>were inadmissible under Evidence Code Section</u>
<u>1101(b) for intent, motive, premeditation and malice</u>

There was no evidence that Petitioner participated in or had any knowledge of the January, 2001 incident. According to his testimony, at that time, he had long since quit AW and had gone to work to help his family economically. (9 RT 820-821) The evidence was that he did not participate in the March, 1999 incident but was merely present. Petitioner's position is that evidence of these two offense was thus inadmissible.

This is so because of the very syntax of Evidence Code Section 1101(b) itself. Evidence Code Section 1101(a) states:

> "Except as provided in this section and in Section 1102, 1103, 1108 and 1109, evidence of a person's character or a trait of his character... is inadmissible when offered to prove his or her conduct on a specified occasion."

Evidence Code Section 1101(b) continues:

> Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident..."

Clearly, the reference to "Person" is to the defendant in a given case, this is

particularly true in the case, where the prior acts evidence in question was admitted to prove <u>Petitioner's</u> intent, motive, malice and premeditation. Thus unless the defendant is the one committing the prior acts, they cannot be admissible under this section. Given that Petitioner <u>was not</u> the person committing the prior acts in question, they were clearly inadmissible under the plain language of the statute.

Moreover, the March, 1999 shooting and the January, 2001 shooting was not admissible for motive under Evidence Code Section 1101(b) as they did not make it more likely than not that Petitioner was the shooter, thus their admission reduced the prosecution's burden of proof.

Motive is not an element of the charged crimes and thus is not required to be proved by the prosecution. Motive can be relevant where proof of the crime is based principally on circumstantial evidence. "Motive is an intermediate fact which may be probative of such ultimate issue as intent, identity, or commission of the criminal act itself.

As defense counsel observed during the discussion of the admissibility of the prior acts evidence, the key issue in the case at bar was the identity of the shooter. (3 RT 30.) However, the prosecution did not rely on circumstantial evidence to prove it. The primary proof of Petitioner's identity as the shooter was provided by Tuyen Tran, who clearly identified Petitioner as the one who had shot Thu Tran. Thus the proof of Petitioner as the shooter was principally based on direct evidence. As such, the fact that Petitioner may have been a member of a gang that had a rivalry with Thu Tran's allegiances did not make it more likely than not that he was the shooter or have any tendency in reason to prove that fact. Thus, to admit this evidence for this purpose acted to reduce the prosecution's burden of proof in violation of Petitioner's Federal

Constitutional due process rights. Permitting or encourageing the jury to make an arbitrary or irrational inference which incriminates the jury violates the Federal Constitution. [A] criminal statutory presumption must be regarded as 'irrational' or arbitrary? and hence unconstitutional unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact upon which it is made to depend.

Moreover, the admission of this evidence was especially prejudicial when the jury was instructed (See p. 50 infra) "Exhibit B" that it could be used for motive, which as we have seen, bears on the determination of identity.

part 3.    The March, 1999 shooting and the January, 2001
           shooting were insufficiently similar to the Currently
           charged offense to be admissible under Evidence Code
           Section 1101 (b) for the purpose for which they were admitted.

In Considering the admissibility of a prior offense for the purpose of establishing intent in the Current offense, it is clear that the trial Court must assess the similarities between the Circumstances of the prior offenses and the Current Crime. While it is true that the least degree of similarity between the charged and uncharged Crimes is required to prove intent, the law requires that there be "Sufficient similarity between such acts" to support the inference that the defendant "Probably harbor[ed]" the same intent in each instance. "Intent may properly be inferred from evidence of specific acts of a similar nature" [Prosecution Could question defendant about prior burglaries that had Sufficient similarities to the Current offense to establish intent]; [admission of prior burglaries that were sufficiently similar to the charged offense proper on the issue of defendant's intent].

In the instant Case, the prior acts admitted for intent were insufficiently similar to the Currently charged conduct to be admissible for that purpose. The prosecutor argued that the two priors "Just show[ed] based upon the status of the two gangs, the unprovoked, violent attacks and use of guns in a way intended to Kill another individual with premeditation, with a motivation to do it Just based upon their gang alliances or their gang rivalries between Asian Warriors and V.N./V.G..." ("Exhibit B") (3 RT 40.) The March, 25, 1999 shooting took place in a Vietnamese Cafe. AW members, including Petitioner

, Vu Truong and others were sitting drinking there when VN members walked in. The VN members left. As they drove away, Vu Truong fired shots in the air and later said he had done so because his companions in the café knew he had a gun and he would lose face if he did not use it. He also said he would have fired at the VN members if he had had the chance because he was a gangster and had to. (1 CT 72.) *"Exhibit A"* The January, 2001 shooting took place when a car with AW members, including Viet Mai, pulled up alongside a car containing a VG member and the VG member's brother. The AW car fired at least seven shots into the VG car, hitting one of its occupants in the leg. The brother told police that he thought AW wanted revenge against him because he had been involved in a fight at the Tinh Café earlier where an AW member had been killed. (1 CT 79.) *"Exhibit A"*

The March, 1999 incident is factually distinct from the case at bar in that in the earlier incident, the shooter said he had fired his gun because otherwise he would lose face with his fellow gang members, who wanted to shoot Thai Tran because he was an enemy, *"Exhibit B"* out of committing the offense, but that Petitioner insisted on doing so. (6 RT 367) Thus, there was no issue about losing face in front of one's friends or fellow gang members which distinguishes this case from the March, 1999 incident.

In terms of the January, 2001 shooting, the prosecutor admitted that that offense did not present the strongest case for admission under Evidence Code Section 1101(b). *(See Exhibit A-B)* (3 RT 31, 40.) That incident was clearly a shooting to avenge the earlier killing of an AW member at the Tinh Café. The deceased had been a good friend of the shooter. In the current one, there was no evidence that Petitioner had any personal revenge motive against Thai Tran and thus had any personal payback motive or ill will there. The two offenses are thus

13

distinct in a key way, specifically their motivation.

Part 4.    <u>The offenses admitted pursuant to Evidence Code Section 1101(b) for intent, motive, premeditation and malice were cumulative as to these issue and should thus not have been admitted.</u>

Evidence Code Section 352 gives the trial Court discretion to exclude cumulative evidence, a products liability case, the plaintiff called four experts to render an opinion on an issue in the case. The trial Court's refusal to allow her to present a fifth same opinion was upheld on appeal as cumulative (Id., at p 371.) [ Trial Court did not abuse discretion in excluding evidence that mother had abused children where there was already evidence before the jury of that fact ].

Here, there was ample evidence aside from the prior crimes of Petitioner's intent, motive, premeditation and malice. He was armed with a gun, and fired multiple shot at Thau Tran from which there could be no other inference than that he was bent on causing death. Plus there was evidence that Petitioner considered Thau Tran an enemy who had to be destroyed. He said as much to Tuyen Tran just prior to the shooting and directed Tuyen to move their car into a getaway position. That he acted according to a preconceived, premeditated plan can be inferred from these facts. As such, the evidence admitted pursuant to Evidence Code Section 1101(b) should have been excluded as clearly cumulative going several. [T] he prosecution has no right to present cumulative evidence which creates a substantial danger of undue prejudice to the defendant.'

Part 5.       The admission of the prior acts evidence
              Violated Evidence Code Section 352.

Assuming the prior acts were admissible under Evidence Code Section 1101(b) for the purposes cited by prosecutor, it was an abuse of discretion per Evidence Code Section 352 to admit them as any probative value they had was substantial outweighed by their prejudical effect.

As set forth in People v Ewoldt, supra, the factors to consider in this analysis include the following:

1. The inflammatory nature of the evidence;

2. The probability of confusion if the prior acts did not result in a criminal conviction;

3. The remoteness in time of the prior offenses from the current offense;

4. The consumption of time of evidence pertaining to the uncharged acts;

5. The probative value of the evidence in terms of its tendency to demonstrate that for which it has been offered.

6. The extent to which the source of the uncharged conduct is independent from the charged conduct.

Application of these factors to the instant case compels the conclusion that admission of the March, 1999 and January, 2001 incident under Evidence Code Section 1101(b) violated Evidence Code Section 352. It bears reminder that the "prejudice" referred to in that section "applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issue. It also bears little relation that gang evidence is highly inflammatory as recently reiterated by the reviewing court and cases cited therein.

Here, factor 1, 2 and 5 weigh in Petitioner's favor. The two prior shootings were inflammatory in that they showed unprovoked gang violence. Violence in which he was not even involved. Although the acts did result in convictions, they were not convictions of Petitioner. The jury could thus have been inclined, as a result of hearing that evidence, to punish Petitioner for earlier gang crimes. This flies completely in the face of the plain language of Evidence Code Section 1101. Finally, the probative value of the evidence was diminished by the fact that it was not sufficiently similar to the charged conduct, as outlined in the preceding section.

Ground Three:

## The limiting instruction as to the other Crimes evidence, was improper.

The Jury received the following instructions as to the other Crimes evidence
First, they were instructed:

"During the trial, certain evidence was admitted for a
limited purpose. You may consider that evidence for that
purpose and no other. (9 RT 917, 1 CT 136.)" "Exhibit C".

Later, they were told with respect to the March, 1999 shooting:
The People have presented evidence that Vu Truong committed
another offense that was not charged in this case.

You may consider this evidence only if the People have proved
by a preponderance of the evidence that Vu Truong in fact
committed the uncharged offense. Proof by a preponderance
of the evidence is a different burden of proof than proof
beyond a reasonable doubt. A fact is proved by a preponderance
of the evidence if you conclude that is more likely than not
that the fact is true.

If the people have not met this burden, you must disregard
the evidence entirely.
If you decide that Vu Truong committed the uncharged offense,
you may, but are not required to consider that evidence for the
limited purpose of deciding whether or not.

The defendant acted with the intent to kill;
The defendant had a motive to commit the
offense alleged in this case;
The defendant acted wilfully, and with premeditation
and deliberation.

In evaluating this evidence, consider the similarities
or lack of similarities between the uncharged offenses
and acts and the charged offenses.

Do not consider this evidence for any other purpose except
for the limited purpose of determining the defendant's
credibility.

Do not conclude from this evidence that the defendant has
a bad character or is disposed to commit crime.

If you conclude that Vu Truong committed the uncharged
offense, that conclusion is only one factor to consider
along with all the other evidence. It is not sufficient
by itself to prove that the defendant is guilty to attempted
murder and assault with a semi-automatic firearm. The
People must still prove each element of every charge
beyond a reasonable doubt. (9 RT 924-926, 1 CT 139.) "Exhibit"

Finally, the jurors were told:

You must consider evidence of gang activity only for the limited purpose of deciding whether the defendant acted with the intent, purpose and knowledge that are required to prove the gang-related enhancements charged; or

The defendant had a motive to commit the crimes charged;

The defendant acted with malice or premeditation.

You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider that facts and information relied on by an expert in reaching his or her opinion.

You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime." (9 RT 941, 1 CT 146.) "Exhibit c"

Inexplicably, the instruction given describing how the jurors should consider the Prior act Vu Truong, one of the 1101(b) offenses was limited to that offense and did not include the January 2001 offense, also admitted for the same 1101(b) purpose. The last instruction the jury was given on the subject, CALCRIM 1403 authorized the jurors to consider "gang activity," presumably referring to all the Prior bad conduct admitted, to prove the gang enhancement as well as for the evidence code Section 1101(b) purpose for which only

the March, 1999 and January, 2001 incidents had been admitted. Thus, the jury was wrongfully allowed to use the May, 1997, February, 1938, August, 11, 1999, April, 2000 and December, 2003 incident for purpose beyond which they were admitted, i.e., for motive, intent, premeditation and malice, all to Petitioner's prejudice. It is error for a trial court to instruct the jury that they can use evidence for a purpose for which it has not been admitted. [although trial court has no <u>sua sponte</u> duty to give a limiting instruction, when it does give such an instruction, it should do so accurately.] Worse yet, the instruction provide no information on the standard of proof for a prior act admitted for intent, motive, premeditation and malice. Such standard of proof is by a preponderance of the evidence. Thus, the jury was permitted to use incident for a wrongful purpose with no guidance on how to determine if such events even took place.

Denial of effective assistance of Counsel (Failure to investigate alibi Witness.)

## Ineffective assistance of Counsel

Petitioner was Constitutionally entitled to effective assistance of Counsel at trial. (6th Amendment, U.S Const) The Court of appeal agreed that defense Counsel's performance was deficient with respect to the above - described instruction, but found such error not be Prejudicial. The Court of appeal finds no prejudice because the jury was instructed that some of the instruction might not apply. Petitioner respectfully submits this does not save the day as the limiting instruction clearly permitted the use of all the prior Conduct for 1101 (b) purpose, i.e. For purpose beyond which they were admitted. This gave the prosecution an extra boost on the issue of premeditation, intent, motive and malice.

## Prejudice (Ground Five)

The wrongful admission of the 2003 incident to show gang rivalry and the March, 1999 and January, 2001 incident under Evidence Code Section 1101 (b) violated Petitioner's Federal Constitutional to due process, making his trial fundamentally unfair [reversal due to wrongful admission of highly prejudicial gang evidence which rendered trial fundamentally unfair] These errors were Compounded by the fact that an improper limiting instruction was give which allowed much of the prior acts evidence to be used for improper purpose beyond that for which it was admitted.

Given that Petitioner's Federal Constitutional rights are implicated the standard of value that test compels beyond doubts the government

can show beyond a reasonable doubt that the error did not contribute to the verdict. The fact that other crimes evidence was legitimately admitted to establish the elements of the gang enhancement does not save the day for the government. First, there was no real dispute that the crime in question was a gang crime, which is what the predicate offenses were used to prove. The real question was the identity of the shooter. Such inflammatory evidence could only have been used to bolster an otherwise weak case where the only direct evidence of petitioner's identification of the shooter was the testimony of his alleged accomplice, Tuyen Tran, who had an obvious motive to lay the blame at petitioner's feet. [The law "recognizes the strong motives that undoubtedly actuate such a witness to prove the defendant on trial to be guilty of the offense, and to palliate as much as possible his own guilty".] To counter this, petitioner presented an alibi defense through various family member. The fact that they were family members did not negate the force of their testimony. The fact that alibi witness were family member did not excuse trial counsel's failure to investigate and present their testimony] Notably Than Tran could not identify petitioner as the shooter. Other than Tuyen Tran, the only identification of petitioner as the shooter was via circumstantial evidence that he had been at the coffee shop or was seen, along with Tuyen, running from the scene. Significantly, the jury requested the reread of the entire testimony of Tuyen Tran, Katly Nguyen and Vuong Duong reread as well as a portion of petitioner's testimony. This is an indicator of a closecase.

Under such circumstances, Reversal is required.

77

1     CRIMINAL STREET GANG, WITH THE SPECIFIC

2     INTENT TO PROMOTE, FURTHER, AND ASSIST

3     IN CRIMINAL CONDUCT BY GANG MEMBERS,

4     WITHIN THE MEANING OF PENAL CODE SECTION

5     186.22(B)(1).

6         "IT IS FURTHER ALLEGED THAT THE

7     DEFENDANT, DUY LE, WAS A PRINCIPAL IN

8     THE OFFENSE CHARGED ABOVE, AND, IN THE

9     COMMISSION OF THE OFFENSE, AT LEAST ONE

10    PRINCIPAL INTENTIONALLY AND PERSONALLY

11    DISCHARGED A FIREARM, A HANDGUN, AND

12    PROXIMATELY CAUSED GREAT BODILY INJURY,

13    AS DEFINED IN PENAL CODE SECTION

14    12022.7, TO THAI TRAN, A PERSON OTHER

15    THAN AN ACCOMPLICE WITHIN THE MEANING OF

16    PENAL CODE SECTION 12022.53(D) AND

17    (E)(1).

18        "COUNT TWO:  ON OR ABOUT APRIL 27TH,

19    2001, IN THE COUNTY OF SANTA CLARA,

20    STATE OF CALIFORNIA, THE CRIME OF

21    ASSAULT WITH A SEMIAUTOMATIC FIREARM, IN

22    VIOLATION OF PENAL CODE SECTION 245(B),

23    A FELONY, WAS COMMITTED BY DUY LE, WHO

24    DID COMMIT AN ASSAULT UPON THE PERSON OF

25    THAI TRAN WITH A SEMIAUTOMATIC FIREARM.

26        "IT IS FURTHER ALLEGED THAT THE

27    DEFENDANT, DUY LE, COMMITTED THE OFFENSE

28    CHARGED ABOVE FOR THE BENEFIT OF, AT THE

Exhibit A

78

1        DIRECTION OF, AND IN ASSOCIATION WITH A

2        CRIMINAL STREET GANG WITH THE SPECIFIC

3        INTENT TO PROMOTE, FURTHER, AND ASSIST

4        IN CRIMINAL CONDUCT BY GANG MEMBERS,

5        WITHIN THE MEANING OF PENAL CODE SECTION

6        186.22(B)(1).

7        "IT IS FURTHER ALLEGED THAT IN THE

8        COMMISSION AND ATTEMPTED COMMISSION OF

9        THE OFFENSE CHARGED ABOVE, THE

10        DEFENDANT, DUY LE, PERSONALLY INFLICTED

11        GREAT BODILY INJURY UPON THAI TRAN, A

12        PERSON NOT AN ACCOMPLICE TO THE OFFENSE,

13        WITHIN THE MEANING OF PENAL CODE

14        SECTIONS 12022.7(A) AND 1203(E)(3).

15        "IT IS FURTHER ALLEGED THAT IN THE

16        COMMISSION AND ATTEMPTED COMMISSION OF

17        THE OFFENSE CHARGED ABOVE, THE

18        DEFENDANT, DUY LE, PERSONALLY USED A

19        SEMIAUTOMATIC HANDGUN, A FIREARM, WITHIN

20        THE MEANING OF PENAL CODE SECTION

21        12022.5(A)(1)."

22        AND TO THESE CHARGES, THE DEFENDANT HAS PLED NOT

23  GUILTY, AND HAS ALSO DENIED THE ALLEGATIONS.

24        THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.

25        "I WILL NOW EXPLAIN SOME BASIC RULES

26        OF LAW AND PROCEDURE.  THESE RULES

27        INSURE THAT BOTH SIDES RECEIVE A FAIR

28        TRIAL.

Exhibit A

1   "DURING THE TRIAL, DO NOT TALK ABOUT

2   THE CASE OR ABOUT ANY OF THE PEOPLE OR

3   ANY SUBJECT INVOLVED IN THE CASE WITH

4   ANYONE, NOT EVEN YOUR FAMILY, FRIENDS,

5   SPIRITUAL ADVISORS, OR THERAPISTS.

6       "YOU MUST NOT TALK ABOUT THESE

7   THINGS WITH THE OTHER JURORS EITHER

8   UNTIL THE TIME COMES FOR YOU TO BEGIN

9   YOUR DELIBERATIONS.

10      "AS JURORS, YOU MAY DISCUSS THE CASE

11  TOGETHER ONLY AFTER ALL OF THE EVIDENCE

12  HAS BEEN PRESENTED, THE ATTORNEYS HAVE

13  COMPLETED THEIR ARGUMENTS, AND I HAVE

14  INSTRUCTED YOU ON THE LAW.

15      "AFTER I TELL YOU TO BEGIN YOUR

16  DELIBERATIONS, YOU MAY DISCUSS THE CASE

17  ONLY IN THE JURY ROOM AND ONLY WHEN ALL

18  JURORS ARE PRESENT.

19      "YOU MUST NOT ALLOW ANYTHING THAT

20  HAPPENS OUTSIDE OF THE COURTROOM TO

21  AFFECT YOUR DECISION.

22      "DURING THE TRIAL, DO NOT READ,

23  LISTEN TO, OR WATCH ANY NEWS REPORT OR

24  COMMENTARY ABOUT THE CASE.  DO NOT DO

25  ANY RESEARCH ON YOUR OWN OR AS A GROUP.

26  DO NOT USE A DICTIONARY OR OTHER

27  REFERENCE MATERIALS, INVESTIGATE THE

28  FACTS, OR LAW, CONDUCT ANY TESTS OR

The word "Exhibit A" is handwritten vertically in the left margin.

80

EXPERIMENTS, OR VISIT THE SCENE OF ANY
EVENT INVOLVED IN THIS CASE. IF YOU
HAPPEN TO PASS BY THE SCENE, DO NOT STOP
OR INVESTIGATE.

"DURING THE TRIAL, DO NOT SPEAK TO
ANY PARTY, WITNESS, OR LAWYER INVOLVED
IN THE TRIAL. DO NOT LISTEN TO ANYONE
WHO TRIES TO TALK TO YOU ABOUT THE CASE
OR ABOUT ANY OF THE PEOPLE OR SUBJECTS
INVOLVED IN IT. IF SOMEONE ASKS YOU
ABOUT THE CASE, TELL HIM OR HER THAT YOU
CANNOT DISCUSS IT. IF THAT PERSON KEEPS
TALKING TO YOU ABOUT THE CASE, YOU MUST
END THE CONVERSATION.

"WHEN THE TRIAL HAS ENDED AND YOU
HAVE BEEN RELEASED AS JURORS, YOU MAY
DISCUSS THE CASE WITH ANYONE. BUT UNDER
CALIFORNIA LAW, YOU MUST WAIT AT LEAST
90 DAYS BEFORE NEGOTIATING OR AGREEING
TO ACCEPT ANY PAYMENT FOR INFORMATION
ABOUT THE CASE.

"IF YOU RECEIVE ANY INFORMATION
ABOUT THIS CASE FROM ANY SOURCE OUTSIDE
OF THE TRIAL, EVEN UNINTENTIONALLY, DO
NOT SHARE THAT INFORMATION WITH ANY
OTHER JUROR. IF YOU RECEIVE SUCH
INFORMATION, OR IF ANYONE TRIES TO
INFLUENCE YOU OR ANY JUROR, YOU MUST

Exhibit A

1    MURDER.  ONE OF THE DEFENDANTS IN THAT CASE, A BAO TRAN,

2    B-A-O, LAST NAME TRAN, WAS CONVICTED OF PENAL CODE SECTION

3    32 FOR HIS ROLE IN THE HOMICIDE.  V.G. GANG MEMBER BY THE

4    NAME OF TRUONG NGUYEN, T-R-U-O-N-G, PLED GUILTY TO A 245

5    WITH A GANG ENHANCEMENT, AS WELL AS AN ARMING ALLEGATION.

6    CO-DEFENDANT CUONG TRAN, C-U-O-N-G, PLED GUILTY TO 245 WITH

7    A GANG ENHANCEMENT.

8         AND THEN, FINALLY, THE PEOPLE, I ACTUALLY DID TRY

9    AN NGUYEN ON THE MURDER CASE, AND THE JURY CONVICTED HIM OF

10   A SECOND DEGREE MURDER CHARGE, AS WELL AS THE GANG

11   ENHANCEMENT.  SO, I JUST WANTED TO MAKE THAT CORRECTION TO

12   THE COURT.

13        AND WITH THAT UNDERSTANDING, PROBABLY THE SIMPLEST

14   WAY -- I DID GO THROUGH MY PAPERS AND GIVE THE AUTHORITY FOR

15   THE DIFFERENT REASONS I WANTED THE EVIDENCE TO COME IN.  SO

16   WHAT I'LL JUST DO IS, I'LL GO THROUGH THE DIFFERENT

17   OFFENSES, AND I'LL EXPLAIN THE REASONS I BELIEVE IT SHOULD

18   BE INTRODUCED.

19        WHAT'S LISTED AS PEOPLE'S A., THE MAY 26TH, 1997

20   HOME INVASION ROBBERY BY LAC TRAN, THE PEOPLE ARE REQUESTING

21   TO INTRODUCE THAT INCIDENT AS A PREDICATE OFFENSE TO PROVE

22   UP THE ELEMENT UNDER 186.22(B)(1) THAT THE PATTERN OF

23   CRIMINAL GANG ACTIVITY, WHICH IS A REQUIREMENT UNDER THE

24   GANG STATUTES.

25        THE SECOND DEGREE BURGLARY QUALIFIES AS AN

26   ENUMERATED OFFENSE.  AND THAT'S THE ONLY REASON THAT THE

27   PEOPLE -- WELL, AND THE PEOPLE ALSO WANT TO INTRODUCE THAT

28   IN, ALSO, AS IT GOES TO THE ELEMENT OF PRIMARY ACTIVITIES OF

Exhibit A

22

Exhibit A

1    THE ORGANIZATION IN COMMITTING THE CERTAIN ENUMERATED

2    OFFENSE.

3         AS THE COURT'S AWARE, THE PRIMARY ACTIVITIES IS

4    IT'S A SECONDARY ELEMENT THAT THE PEOPLE MUST PROVE IN A

5    CASE.  AND THE ONE THING THAT I WILL BE REQUESTING THIS

6    COURT, AND I CAN PREPARE A LIMITING INSTRUCTION, IS THAT

7    SEVERAL OF THESE OTHER INCIDENTS ARE GOING TO BE INTRODUCED

8    GOING SPECIFICALLY TO THE GANG ENHANCEMENT, OR THEY ARE

9    GOING TO BE GOING AS TO THE BASIS OF A GANG EXPERT'S

10   OPINION.  AND WHEN I PLAN ON INTRODUCING THIS EVIDENCE, I

11   WILL EITHER ALLOW THE COURT OR I'LL MAKE THE OFFER OF PROOF

12   THAT I AM OFFERING THIS FOR A LIMITED BASIS, AND THE JURY,

13   IN MY OPINION, SHOULD BE INSTRUCTED OF THE LIMITED NATURE

14   THAT THIS EVIDENCE IS BEING RECEIVED.

15        THE COURT:  SO YOU'LL PREPARE THAT LIMITING

16   INSTRUCTION?

17        MR. DAUGHERTY:  YES, YOUR HONOR.

18        THE COURT:  ALL RIGHT.

19        MR. DAUGHERTY:  AND THEN THE SECOND INCIDENT,

20   WHICH IS LISTED AS PEOPLE'S EXHIBIT B, INCIDENT NUMBER B.,

21   THE FEBRUARY 20TH, 1998 HOMICIDE, THE PEOPLE ARE ASKING THAT

22   THAT BE INTRODUCED AS EVIDENCE OF THE PRIMARY ACTIVITIES OF

23   ASIAN WARRIORS.

24        ALSO, IT WILL BE INTRODUCED AS EVIDENCE THROUGH

25   DETECTIVE ODAMA'S EXPERT OPINION BETWEEN THE ONGOING RIVALRY

26   BETWEEN ASIAN WARRIORS OR V.N. OR V.G.  I THINK I'VE

27   INDICATED THROUGH MY PAPERS, AND MAYBE IT'S NOT VERY CLEAR,

28   SOME OF THE INCIDENTS BETWEEN THE DEFENDANT'S GANG, ASIAN

Exhibit A

23

1    WARRIORS, AND TWO SEPARATE GANGS, ONE IS V.N., WHICH STAND

2    FOR VIETNAM, AND THERE IS A SECONDARY GANG KNOWN AS V.G., OR

3    VIETNAMESE GANGSTERS.  VIETNAMESE GANGSTERS IS, BASICALLY, A

4    YOUNGER-BROTHER GANG TO V.N.  THEY ASSOCIATED WITH ONE

5    ANOTHER.  THEY COMMIT CRIMES WITH ONE ANOTHER.  AND AS

6    DETECTIVE ODAMA WILL TESTIFY BEFORE THIS COURT, ASIAN

7    WARRIORS VIEW VIETNAMESE GANGSTERS AND V.N. BASICALLY AS THE

8    SAME ORGANIZATION.  THEY ARE JUST ONE IS A YOUNGER

9    GENERATION OF THE FIRST.

10            AND, SO, THE FACT THAT SOME OF THE VIOLENCE TAKE

11   PLACE BETWEEN ASIAN WARRIORS AND VIET GANGSTERS, OR ASIAN

12   WARRIORS OR V.N., IS, BASICALLY, THE SAME ONGOING RIVALRY.

13   AND THIS WILL BE EXPLAINED BY OFFICER ODAMA IN HIS EXPERT

14   OPINION.

15            SO, THE FACT THAT ONE OF THE MAIN PEOPLE INVOLVED

16   IN THIS CASE IS NICK DANG, WHICH I'VE IDENTIFIED IN THIS

17   REPORT, NICK DANG IS A MEMBER OF V.N., AND NICK DANG

18   ACTUALLY BEGAN THE VIETNAMESE GANGSTERS' YOUNGER GENERATION

19   GANG.  SO, HE IS THE BRIDGE BETWEEN THE TWO ORGANIZATIONS.

20            SO, THE PEOPLE ARE ASKING TO INTRODUCE THAT

21   INCIDENT:  ONE, FOR THE PRIMARY ACTIVITIES OF A-DUB; ALSO AS

22   RIVALRY EVIDENCE OF THE EXPERT OPINION.  AGAIN, WITHOUT

23   GOING INTO IT, YOUR HONOR, I'LL BE ASKING FOR A LIMITING

24   INSTRUCTION FOR EVERY ONE OF THESE INCIDENTS AS IT APPLIES

25   TO WHY I'M INTRODUCING IT.  SO, I WILL CONSTRUCT AN

26   APPROPRIATE LIMITING INSTRUCTION FOR THAT PURPOSE.

27            LETTER C., THE MARCH 25TH, 1999 INCIDENT.  THE

28   PEOPLE ARE REQUESTING THAT THAT BE INTRODUCED FOR SEVERAL

24

1    REASONS.  ONE IS AS A PREDICATE ACT TO SHOW THE PATTERN OF

2    CRIMINAL GANG ACTIVITY.  IT ALSO IS EVIDENCE OF THE PRIMARY

3    ACTIVITIES OF ASIAN WARRIORS.  IT'S ALSO EVIDENCE OF THE

4    RIVALRY BETWEEN ASIAN WARRIORS AND V.N.  AND ALSO, YOUR

5    HONOR, I'M REQUESTING THIS EVIDENCE BE INTRODUCED UNDER

6    1101(B).

7         THE COURT:  LET'S DEAL WITH THE 1101(B) ISSUE

8    SEPARATELY.

9         MR. DAUGHERTY:  OKAY.  WOULD YOU LIKE ME TO

10   ADDRESS THAT AT THIS POINT?

11        THE COURT:  NO.

12        MR. DAUGHERTY:  WE'LL COME BACK TO THAT LATER?

13        THE COURT:  COME BACK TO THAT.  YOU CAN CONTINUE

14   ARTICULATING THE REASONS THAT YOU SEEK TO ADMIT EACH ONE OF

15   THESE CRIMES.  HOWEVER, THE 1101(B), WE NEED TO ARGUE THAT

16   FIRST.

17        MR. DAUGHERTY:  OKAY.  AND SO, YOUR HONOR, IN THAT

18   CASE, AND THIS IS CLEARLY ASIAN WARRIORS GANG MEMBERS

19   SHOOTING AT V.N. GANG MEMBERS.  SO, I BELIEVE THAT IT'S

20   ACCEPTABLE FOR THOSE THREE GANG-RELATED PURPOSES.

21        THE INCIDENT NUMBER D., THE AUGUST 11TH, 1999

22   SHOOTING, THE PEOPLE ARE ASKING THAT THAT EVIDENCE BE

23   INTRODUCED, AGAIN, AS A PREDICATE ACT TO SHOW THE PATTERN OF

24   CRIMINAL GANG ACTIVITY BY ASIAN WARRIORS, AND ALSO TO GO TO

25   THE PRIMARY ACTIVITIES OF ASIAN WARRIORS AS COMMITTING THE

26   ENUMERATED OFFENSES.  IN THIS CASE, IT, AGAIN, WAS THE

27   SECOND DEGREE BURGLARY CHARGE.

28        INCIDENT NUMBER E., WHICH IS THE APRIL 21ST, 2000

Exhibit A

1   HOMICIDE, THIS IS ACTUALLY THE CASE I JUST TALKED ABOUT WITH

2   THE COURT WHERE V.G. GANG MEMBERS MURDERED AN ASIAN WARRIOR

3   GANG MEMBER.  AND IN THAT CASE, IT IS CLEARLY EVIDENCE OF

4   THE RIVALRY AND ONGOING ANIMOSITY BETWEEN THESE TWO GANGS.

5   AND SO IT WOULD BE USED BY THE EXPERT IN FORMULATING HIS

6   OPINION ABOUT THE ONGOING VIOLENT CONFLICTS BETWEEN THESE

7   TWO GANGS.

8           THE JANUARY 23RD, 2001 SHOOTING, PEOPLE'S F.,

9   AGAIN, THIS IS A SHOOTING BY AN ASIAN WARRIOR GANG MEMBER

10  AGAINST A V.G. GANG MEMBER.  THE PEOPLE INTEND ON USING THIS

11  AS A PREDICATE ACT AND TO SHOW THE PATTERN OF GANG ACTIVITY.

12  THE PEOPLE ARE ALSO INTRODUCING THIS AS THE PRIMARY

13  ACTIVITIES OF ASIAN WARRIOR GANG MEMBERS.

14          AND, FURTHERMORE, THE PEOPLE ARE ASKING THAT IT'S

15  FURTHER EVIDENCE OF THE RIVALRY.  VIET MAI, WHO'S THE ASIAN

16  WARRIOR GANG MEMBER WHO SHOT THAT CASE INDICATING THAT THAT

17  WAS IN REVENGE FOR THE MURDER OF VU PHAM, THAT HAPPENED IN

18  APRIL OF 2000.

19          AND THE REAL RELEVANCE AS TO BOTH OF THOSE CASES

20  AND THE PRESENT CASE IS, WE HAVE THAT INCIDENT TOOK PLACE

21  JANUARY 23RD, 2001.  OUR PRESENT CASE, WHICH IS THE

22  DEFENDANT ALLEGEDLY SHOOTING A V.N. GANG MEMBER ON APRIL

23  27TH 2001, A LITTLE MORE THAN OR ABOUT THREE MONTHS APART,

24  FURTHER IDENTIFIES THE REASON FOR THE CRIME.

25          THE COURT HAS TO TAKE INTO ACCOUNT THE FACTS THAT

26  THE PRESENT CASE, THAT MR. LE SHOT THE VICTIM IN OUR CASE

27  COMPLETELY UNPROVOKED.  THERE WAS ABSOLUTELY NO WORDS, NO

28  PRIOR PROBLEMS BETWEEN THE DEFENDANT AND THE VICTIM IN THIS

Exhibit A

CASE, OTHER THAN THE FACT THAT THE VICTIM HAPPENED TO BELONG

TO V.N., AND HE WAS AN ASIAN WARRIOR GANG MEMBER.  AND I'LL

GET BACK TO IT, THAT SAME INCIDENT, THE PEOPLE ARE GOING TO

BE REQUESTING UNDER 1101(B), BUT I'LL RETURN TO THAT

ARGUMENT LATER.

AND THEN, FINALLY, THE PEOPLE'S ITEM G., WHICH IS

THE DECEMBER 17TH, 2003 MURDER OF NICK DANG.  AGAIN, NICK

DANG IS THE V.N. GANG MEMBER THAT STARTED V.G.  HE WAS

MURDERED RECENTLY IN SUNNYVALE BY ASIAN WARRIOR GANG

MEMBERS.

THIS IS EVIDENCE THAT DETECTIVE ODAMA WOULD USE IN

HIS OPINION THAT THERE WAS, IN FACT, A VIOLENT RIVALRY

BETWEEN THESE TWO GANGS AT THE DATE OF THIS OFFENSE.  THE

PEOPLE RECOGNIZE THAT THIS CRIME OCCURS AFTER OUR PRESENT

SHOOTING.  HOWEVER, THE PEOPLE BELIEVE THAT IT'S HIGHLY

RELEVANT EVIDENCE THAT THE EXPERT WILL USE IN HIS OPINION.

YES, THERE WAS AN ONGOING VIOLENT RIVALRY BETWEEN THESE TWO

ORGANIZATIONS BACK ON APRIL OF 2001 THAT CONTINUED ON THAT

FURTHER VALIDATES HIS OPINION OF WHAT THE CIRCUMSTANCES OF

THE RIVALRY WAS BACK IN 2001.  FURTHERMORE, IT'S EVIDENCE OF

THE ONGOING NATURE OF ASIAN WARRIORS, WHICH IS ONE OF THE

ELEMENTS THAT WE HAVE TO PROVE THAT IT'S AN ONGOING CRIMINAL

STREET GANG.

THE PEOPLE, AGAIN, WILL, FOR EACH OF THESE

INSTANCES, WILL BE REQUESTING A LIMITING INSTRUCTION FOR THE

PURPOSE THAT WE ARE REQUESTING THAT IT COME IN.  AND,

REALLY, AS THE CASE AUTHORITY INDICATES, THE ONE OBVIOUS

ISSUE THAT MUST HAPPEN IS THAT THIS COURT MUST EVALUATE THE

27

EVIDENCE UNDER 352.

I BELIEVE, ONE, THE FACT THAT THESE ARE ALL ELEMENTS OF THE ENHANCEMENT CHARGED IN THIS CASE IS PROBATIVE AND IMPORTANT TO INTRODUCE BEFORE THE JURY. THE FACT THAT ALL OF THESE INCIDENCES INVOLVE CRIMES COMMITTED BY OTHER GANG MEMBERS OTHER THAN THE DEFENDANT TAKES AWAY FROM ITS PREJUDICIAL EFFECT AND GOES SPECIFICALLY TO THE GANG ENHANCEMENT AND THE MOTIVATION FOR THIS CRIME.

IF THE COURT TAKES IN AND REALLY LOOKS AT THE FACTS OF THIS CASE, IT'S HIGHLY RELEVANT FOR THE JURY TO RECOGNIZE WHY DID THE DEFENDANT SHOOT A PERSON THAT HE'S HAD NO PROBLEMS WITH, SHOOT AT HIM IN AN OCCUPIED CAFE THAT AFTERNOON, AND TRY TO KILL HIM, UNLESS THEY FULLY UNDERSTAND THE CIRCUMSTANCES AND SCOPE OF THE GANG THAT THE DEFENDANT BELONGS IN AND THE RELATIONSHIP BETWEEN THE TWO GANGS. I BELIEVE IT'S APPROPRIATE. I DON'T BELIEVE IT IS 352.

I HAVE FULLY ARGUED THIS MOTION AND CITED THE NUMEROUS CASES WITHIN MY PAPERS. AND WITH REGARD TO THOSE ISSUES, AND I'LL RESERVE THE 1101(B), OR DOES THE COURT WANT ME TO ADDRESS THE 1101(B) NOW?

THE COURT: I'D LIKE TO DEAL WITH THEM SEPARATELY, BECAUSE SEPARATE FINDINGS NEED TO BE MADE.

MR. DAUGHERTY: SURE.

THE COURT: THERE HAVE TO BE 352 ANALYSIS WITH RESPECT TO THESE CRIMES.

MR. DAUGHERTY: ALL THESE CRIMES, YOUR HONOR, THAT IS REALLY THE HEART OF THE ISSUE. ALL OF THE CRIMES THAT I'VE INDICATED AND REQUESTED TO INTRODUCE, THEY ARE CLEARLY

30

1    MR. LOPEZ:  AND, YOUR HONOR, I'D ASK THAT THE

2    COURT, UNDER 352, LIMIT THE PRIORS; NAMELY, THAT THE 2000,

3    APRIL 21ST, 2000 HOMICIDE.  BECAUSE WHAT WE HAVE HERE IS, WE

4    HAVE A SITUATION WHERE THE DISTRICT ATTORNEY IS BRINGING IN

5    THESE CRIMES NOT JUST TO SHOW THE PRIMARY ACTIVITIES AND TO

6    PROVE UP THE PREDICATES; HE'S INTRODUCING THESE TO SHOW THAT

7    THERE IS SOME TYPE OF PROPENSITY THAT ASIAN WARRIOR GANG

8    MEMBERS ARE ALWAYS GOING TO SHOOT, ALWAYS GOING TO SHOOT

9    MEMBERS OF THE V.N. OR V.G. GANG.  AND I THINK THAT'S OVERLY

10   PREJUDICIAL.

11    I THINK THE QUESTION HERE IS, AND WHAT'S GOING TO

12   BE AT ISSUE IN THE CASE IS, WAS DUY LE THE SHOOTER IN THIS

13   CASE.  AND IN AN ATTEMPT TO TRY TO PROVE THAT THERE IS THIS

14   RIVALRY, I THINK THAT HE'S GOING OVERBOARD IN BRINGING IN

15   ALL THESE PRIORS.

16    AND, ALSO, THE COURT HAS TO LOOK AT RELIABILITY

17   HERE.  IF WE TURN TO, I BELIEVE IT'S THE JANUARY 23RD, 2001

18   SHOOTING -- AND BY THE WAY, MR. DAUGHERTY IS GOING TO

19   PROVIDE ME WITH THE POLICE REPORTS, BUT I READ

20   CROSS-REFERENCES OF THAT.  AND THE PERSON WHO'S THE VICTIM

21   OF THAT CASE, THE PERSON WHO GETS SHOT, HE TELLS THE

22   OFFICERS HE THINKS THAT HE MIGHT HAVE GOT SHOT BY A.W. IN

23   RESPONSE TO THE HOMICIDE.  BUT, I MEAN, IN THAT CASE,

24   CLEARLY FROM THEIR OWN LANGUAGE THAT MR. DAUGHERTY

25   INTRODUCED IN HIS MOVING PAPERS, IT SEEMS SPECULATIVE TO ME.

26   IT'S THE VICTIM IN THAT CASE STATING THAT HE'S SPECULATING

27   THAT HE WAS SHOT BECAUSE OF A RETALIATION.

28    SO, WHAT WE HAVE HERE IS, WE HAVE THE

34

Exhibit A

```
1    ALLEGE THAT HE WAS ACTIVELY PARTICIPATING IN THIS GANG IF

2    THINGS HAPPENED AFTER THIS CASE SEVERAL YEARS LATER, THAT

3    THAT SHOULD NOT BE INTRODUCED AGAINST MR. LE IN THIS CASE.

4            SO, BASICALLY, IN A NUTSHELL WHAT I'M ASKING THE

5    COURT TO DO IS TO LIMIT THESE OFFENSES, OR THE CONDUCT IN

6    THESE OFFENSES, TO LIMIT THEM SO THAT THEIR EFFECT OVERALL

7    IS NOT PREJUDICIAL.

8            THE COURT:  MR. DAUGHERTY HAD STATED THAT THE

9    DECEMBER 17, 2003 INCIDENT WAS PROBATIVE OF THE FACT THAT

10   THERE WAS A VIOLENT RIVALRY, AND THE FACT THAT IT WAS

11   ONGOING, AND THAT THAT WAS ONE OF THE ELEMENTS THAT THE

12   PEOPLE NEED TO PROVE.  IS THAT CORRECT, OR IS THAT A

13   MISSTATEMENT?

14           MR. LOPEZ:  NO.  WHAT I'M ASKING THE COURT TO DO,

15   I DON'T THINK THAT ALL OF THESE CRIMES THAT ARE LISTED IN

16   MR. DAUGHERTY'S MOVING PAPERS, THAT ALL OF THEM ARE

17   NECESSARY TO GIVE THE JURY AN IDEA OF WHAT WE ARE TALKING

18   ABOUT; THE ALLEGED RIVALRY THAT'S BEING DISCUSSED BY THE

19   EXPERT.  THE EXPERT IS GOING TO BE ALLOWED TO TESTIFY ABOUT

20   HIS OPINION.  HE CAN DEFINITELY TAKE ALL THESE PRIORS INTO

21   ACCOUNT IN RENDERING HIS OPINION.  BUT TO HAVE HIM STATE

22   EVERY SINGLE ONE, I THINK THE OVERALL EFFECT OF THAT IS

23   GOING TO BE PREJUDICIAL AND IS GOING TO DENY MR. LE HIS

24   CONSTITUTIONAL RIGHT TO A FAIR TRIAL.

25           THE COURT:  ALL RIGHT.  ANYTHING FURTHER ON THIS

26   ISSUE, MR. DAUGHERTY?

27           MR. DAUGHERTY:  NO, YOUR HONOR.

28           THE COURT:  ALL RIGHT.  THEN BASED UPON THE OFFERS
```

35

1   OF PROOF AS ARTICULATED BY MR. DAUGHERTY HERE IN COURT THIS

2   MORNING, AS WELL AS THE OFFERS OF PROOF CONTAINED IN THE

3   PEOPLE'S BRIEF ON THIS ISSUE, THE COURT DOES FIND THAT EACH

4   ONE OF THESE INSTANCES IS PROBATIVE TO THE ELEMENTS OF THE

5   ENHANCEMENT AND ISSUES THAT THE PEOPLE ARE REQUIRED TO

6   PROVE.

7           FURTHER, THE FACT THAT THEY DO INVOLVE INDIVIDUALS

8   OTHER THAN THE DEFENDANT, THE PREJUDICIAL VALUE IS LESSENED,

9   AND ANY PREJUDICIAL VALUE WILL BE FURTHER LESSENED WHEN THE

10   COURT GIVES THE APPROPRIATE LIMITING INSTRUCTION.

11           ACCORDINGLY, THE COURT WILL ALLOW EVIDENCE

12   REGARDING EACH ONE OF THE INSTANCES WHICH THE PEOPLE WISH TO

13   INTRODUCE.  AND THE COURT DOES FIND THAT THE PROBATIVE VALUE

14   DOES OUTWEIGH THE PREJUDICIAL EFFECT.  SO, THE MOTION IN

15   LIMINE IS GRANTED.

16           LET'S MOVE ON NOW TO THE 1101(B).

17           MR. DAUGHERTY:  YOUR HONOR, SO AS I INDICATED, THE

18   TWO ISSUES, ONE WAS PEOPLE'S LETTER C., AS WELL AS PEOPLE'S

19   LETTER F., ARE THE TWO ITEMS THAT THE PEOPLE ARE REQUESTING

20   UNDER 1101(B).

21           CLEARLY, AS I'VE CITED IN THE PAPERS THAT I HAVE,

22   SPECIFICALLY, PEOPLE VERSUS FUNES, F-U-N-E-S, WHICH I'VE

23   CITED, ZEPEDA, AND WILLIAMS, THAT 1101(B) IS APPROPRIATE,

24   EVEN THOUGH THE PAST CONDUCT IS NOT CONDUCT BY THE DEFENDANT

25   IS APPROPRIATE AS EVIDENCE GOING TO THE ISSUE OF INTENT,

26   MALICE, MOTIVE, PREMEDITATION.

27           AND IN PARTICULAR, WITH THE SHOOTING ON MARCH 25TH

28   OF 1999, LETTER C., IN THAT CASE ASIAN WARRIOR GANG MEMBERS

Exhibit A

1    ARE IN A CAFE.  THEY SEE THEIR RIVALS:  V.N. GANG MEMBERS.

2    WHEN THE THREE V.N. GANG MEMBERS LEAVE, VU TRUONG, AN ASIAN

3    WARRIOR GANG MEMBER, FOLLOWS THEM OUT.  HE HAS A HANDGUN,

4    AND HE TAKES SHOTS AT THEM AS THEY ARE DRIVING AWAY.  HE WAS

5    SPECIFICALLY ASKED WHY HE SHOT AT THE V.N. GANG MEMBERS, AND

6    HE SAID THAT HIS FRIENDS IN THE CAFE KNEW THAT HE HAD A GUN,

7    AND IF HE DIDN'T USE THE GUN AGAINST THE V.N., HE WOULD LOSE

8    FACE.  AND THEN HE WAS ASKED WHETHER OR NOT HE WOULD SHOOT

9    THE V.N. INSTEAD OF JUST FIRING IN THE AIR IF HE HAD A

10   CHANCE.  HE SAID, "YES, I HAVE TO.  I'M A GANGSTER."

11        YOUR HONOR, MR. TRUONG IS ACTUALLY IN CUSTODY.

12   HE'S ACTUALLY FACING -- HE'S IN CUSTODY ABOUT TO BE

13   SENTENCED ON A CASE.  THE PEOPLE ARE GOING TO ASK TO HAVE

14   HIM TESTIFY.  IF HE REFUSES TO TESTIFY, THE PEOPLE WILL ASK

15   HIM TO BE DECLARED UNAVAILABLE.  AND, ACTUALLY, DETECTIVE

16   ODAMA WAS THE OFFICER THAT TOOK THAT STATEMENT FROM

17   MR. TRUONG BACK WHEN HE WAS ARRESTED.  SO THEN THE PEOPLE

18   ARE GOING TO ASK MR. VU TRUONG TO BE DECLARED UNAVAILABLE.

19   AND THEN, BECAUSE IT'S A DECLARATION AGAINST PENAL INTEREST,

20   ALLOW DETECTIVE ODAMA TO TESTIFY ABOUT THE STATEMENT.

21        AND, AGAIN, WITH THE LIMITING INSTRUCTION, I

22   BELIEVE IT IS NECESSARY TO UNDERSTAND THE MIND SET OF WHAT

23   IT MEANS TO BE AN ASIAN WARRIOR GANG MEMBER, AND WHY AN

24   ASIAN WARRIOR GANG MEMBER WOULD FIRE WITHOUT PROVOCATION

25   AGAINST V.N. GANG MEMBERS.

26        I DON'T THINK YOU CAN FIND A STATEMENT THAT IS

27   MORE REFLECTIVE OF THAT ATTITUDE THAN THE ONE GIVEN BY VU

28   TRUONG, WHO IS AN ONGOING ASIAN WARRIOR GANG MEMBER TO THIS

Exhibit A

CINDY L. MOHR, CSR #4450, RPR, CRR

Exhibit A

1   DATE.  IN FACT, THERE HAVE BEEN PREVIOUS STOPS OF VU TRUONG

2   WITH THE DEFENDANT IN THIS CASE PRIOR TO OUR SHOOTING.

3          SO, THE PEOPLE BELIEVE THAT THAT IS CLEARLY

4   RELEVANT UNDER 1101(B) FOR THOSE ISSUES.  BECAUSE AS THE

5   COURT'S AWARE, THE DEFENDANT IN THIS CASE IS CHARGED WITH

6   ATTEMPTED MURDER WITH PREMEDITATION.  ALSO, THAT THIS CRIME

7   WAS DONE FOR THE SPECIFIC INTENT TO PROMOTE, FURTHER, OR

8   ASSIST IN CRIMINAL CONDUCT BY GANG MEMBERS.  AS SUCH, HIS

9   INTENT, THE MOTIVE FOR THE CRIME, THE PREMEDITATION, ALL OF

10  THAT IS HIGHLY RELEVANT.  AND THIS STATEMENT BY VU TRUONG IS

11  RELEVANT FOR THIS JURY TO CONSIDER WHEN LOOKING INTO THE

12  REASON WHY THE DEFENDANT, AS AN ASIAN WARRIOR GANG MEMBER,

13  WOULD DO THIS CONDUCT.

14          WITH REGARD TO THE JANUARY 23RD, 2001 SHOOTING,

15  FURTHER EVIDENCE FROM VIET MAI WAS THAT HIS SHOOTING OF THE

16  TWO INDIVIDUALS IN THE CAR WAS BASED UPON THE FACT THAT HIS

17  GOOD FRIEND HAD BEEN MURDERED BACK IN APRIL OF 2000.  THAT

18  THERE WAS A REASON FOR THIS SUBSEQUENT SHOOTING WAS

19  FOLLOW-UP IN THAT MOTIVATION FOR THAT REASON.  AND, SO, THE

20  PEOPLE IN THIS CASE WOULD BE ACTUALLY PROVING UP THROUGH A

21  CERTIFIED COURT DOCUMENT THE FACT THAT VIET MAI PLED GUILTY

22  TO THE 245 IN THAT CASE, AS WELL AS THE 186.22(B) AS

23  EVIDENCE OF THE INTENT, WHICH IS NOT AS STRONG AS THE FIRST

24  INCIDENT, BUT I BELIEVE THAT THAT'S APPROPRIATE FOR THE JURY

25  TO ALSO CONSIDER WHEN LOOKING INTO THE ISSUE OF INTENT,

26  MOTIVE, AND PREMEDITATION IN THE PRESENT CASE.

27          THE COURT:  AND MALICE?

28          MR. DAUGHERTY:  YES, YOUR HONOR, AND MALICE.

43

Exhibit A

1    RAISING UNDER 352 WAS THE FACT THAT MR. LE WAS NOT A SUSPECT

2    OR WAS NOT CONVICTED OF COMMITTING THOSE CRIMES.  BUT THE

3    FACT THAT MR. LE IS PRESENT, I THINK THAT THAT IS OVERLY

4    PREJUDICIAL IN A SENSE THAT HE'S BEING IMPLICATED IN THIS

5    CRIME AS HAVING SOME TYPE OF KNOWLEDGE, OR PRESENCE, OR

6    BEING AWARE, WITHOUT ANY EVIDENCE THAT HE WAS EVEN IN THE

7    COFFEE SHOP.  SO THAT'S WHY I WOULD ASK THE COURT TO EXCLUDE

8    IT UNDER 352.

9         ALSO, IN REGARDS TO THE SIMILARITIES, AND STILL

10   FOCUSING ON THE MARCH '99 INCIDENT, I THINK THERE IS SOME

11   DEFINITE DISTINCTIONS BETWEEN THE TWO.  SOME OF THE

12   DISTINCTIONS ARE IN THE MARCH '99 INCIDENT, WE HAVE A

13   SITUATION WHERE THERE IS THIS CONFLICT BETWEEN A GROUP OF

14   ASIAN WARRIORS AND A GROUP OF V.N. THAT COMES INTO THE

15   RESTAURANT.  AND, BASICALLY, WHAT WE HAVE IS A GROUP OF --

16   OR THE DEFENDANT IN THAT CASE SAYING THAT BECAUSE HE WAS

17   WITH A GROUP OF HIS FRIENDS, HE FELT THAT HE HAD TO SHOOT

18   THIS OTHER INDIVIDUAL; OTHERWISE, HE WOULD LOSE FAITH (SIC)

19   WITH HIS FRIENDS.  THAT'S DIFFERENT THAN THIS CASE.

20        IN THIS CASE, ACCORDING TO THE PROPOSED EVIDENCE,

21   ALLEGEDLY MR. LE WAS IN THE COFFEE SHOP WITH ANOTHER MEMBER

22   OF A SUBSET OF THE GANG.  AND THIS INDIVIDUAL, ACCORDING TO

23   STATEMENTS THAT WERE PROVIDED TO THE DEFENSE, IS TRYING TO

24   TALK MR. LE OUT OF COMMITTING THIS CRIME, OR COMMITTING THE

25   SHOOTING, AS OPPOSED TO INSTIGATING IT, OR TRYING TO SAVE

26   FAITH (SIC).  WE HAVE THE OTHER INDIVIDUAL TRYING TO STOP

27   HIM.  IF WE BELIEVE WHAT WAS IN THESE STATEMENTS THAT WERE

28   PROVIDED TO THE DEFENSE, THAT'S THE DISTINCTION.  IN ONE WE

1    HAVE RIVAL MEMBERS WHO ARE, IN A SENSE, WHERE THE SHOOTER

2    WANTS TO NOT LOSE FAITH (SIC) WITH HIS COMRADES.

3         IN THIS CASE, WE HAVE A SITUATION WHICH IS THE

4    COMPLETE OPPOSITE, WHERE YOU HAVE THE FELLOW GANG MEMBER

5    TELLING HIM NOT TO DO IT; SAVE IT FOR ANOTHER DAY; IT'S NOT

6    A GOOD TIME.  THAT'S THE DISTINCTION I'D LIKE TO POINT OUT

7    TO THE COURT AS TO THE MARCH '99 INCIDENT.

8         AND THEN IF WE CAN GO TO THE OTHER INCIDENCE,

9    WHICH I BELIEVE WAS THE JANUARY 23RD, 2001 SHOOTING.  THAT

10   INVOLVED A GOOD FRIEND, ACCORDING TO WHAT MR. DAUGHERTY

11   NOTED, A GOOD FRIEND WHO WAS MURDERED.  AND IT'S REVENGE

12   BECAUSE HIS GOOD FRIEND GOT SHOT.

13        HERE, THERE IS NO EVIDENCE THAT THERE WAS ANY

14   CONFLICT BETWEEN MR. LE AND THE MEMBERS OF THE PERSON WHO

15   GOT SHOT IN THE COFFEE SHOP, OR THAT MR. LE WAS GOOD FRIENDS

16   OF VU PHAM, WHO WAS THE VICTIM OF THE STABBING.  SO THERE

17   REALLY ISN'T THIS CONNECTION TO SHOW SIMILARITIES BETWEEN

18   THE TWO CRIMES WHERE MR. LE IS TRYING TO GET SOME TYPE OF

19   PAYBACK AGAINST THE -- WHAT IS IT, THE V.G. OR THE V.N.  I

20   DON'T SEE HOW THAT CAN LOGICALLY CONNECT BETWEEN THE TWO.

21   BECAUSE THERE REALLY IS NO SIMILARITIES IN THAT REGARDS THAT

22   MR. LE SOMEHOW SAW THAT PERSON WHO WAS INVOLVED IN THE

23   MURDER OF HIS GOOD FRIEND, OR WANTED TO GET PAYBACK FOR THE

24   MURDER OF HIS GOOD FRIEND.  THERE IS NO EVIDENCE THAT'S

25   GOING TO BE PRESENTED AS TO THAT.

26        SO, I'D ASK THAT THAT BE EXCLUDED, BECAUSE THEY

27   ARE NOT SIMILAR AND UNDER 352.

28        THE COURT:  ANYTHING FURTHER?

Exhibit A

45

Exhibit A

1      MR. DAUGHERTY:  YOUR HONOR, I JUST, IN LOOKING AT

2  THE CASE, I JUST WANTED TO CORRECT -- I INDICATED THAT TAK

3  ODAMA WAS THE INDIVIDUAL THAT INTERVIEWED VU TRUONG.  IT'S

4  ACTUALLY OFFICER PAYNE, WHO I DO HAVE ON THE WITNESS LIST.

5  SO, I WANTED TO MAKE THAT CORRECTION ON THE RECORD.

6      THE COURT:  VERY WELL.  THEN THE COURT DOES FIND

7  THAT THE FACTS SOUGHT TO BE INTRODUCED BY THE PEOPLE ARE

8  SUFFICIENTLY SIMILAR TO THOSE AT ISSUE IN THIS CASE, AS THEY

9  HAVE BEEN THUS FAR DESCRIBED TO THE COURT, AND SUPPORT THE

10  INFERENCE THAT THE DEFENDANT HAD THE REQUISITE INTENT,

11  MOTIVE, MALICE AND PREMEDITATION.  ACCORDINGLY, THE EVIDENCE

12  IS RELEVANT.

13      IN TERMS OF THE 352 ANALYSIS, THE COURT FINDS THAT

14  THE INSTANCES ARE SUBSTANTIALLY SIMILAR.  THAT THIS

15  EVIDENCE, THE PRESENTATION OF THIS EVIDENCE, WILL NOT

16  CONSUME AN UNDUE AMOUNT OF TIME.

17      AND FURTHER, THAT ANY PREJUDICIAL EFFECT WILL BE

18  MITIGATED BY THE COURT GIVING THE APPROPRIATE LIMITING

19  INSTRUCTION.

20      ACCORDINGLY, THE COURT DOES CONCLUDE THAT THE

21  PROBATIVE VALUE OF THE EVIDENCE OF THE UNCHARGED OFFENSES IN

22  ESTABLISHING THE EXISTENCE OF INTENT, MOTIVE, MALICE AND

23  PREMEDITATION OUTWEIGHS ITS PREJUDICIAL EFFECT.

24      ACCORDINGLY, THE EVIDENCE WILL BE ADMITTED, AND

25  THE PEOPLE'S MOTION IN LIMINE IS GRANTED.

26      DO THE PEOPLE HAVE ANY ADDITIONAL MOTIONS IN

27  LIMINE?

28      MR. DAUGHERTY:  YOUR HONOR, THERE IS ONE MOTION

820

Exhibit "B"

1    Q.    AND DURING THIS TIME, DID YOU HAVE -- EVER MAKE ANY

2    CONTACT WITH POLICE OFFICERS?  FOR EXAMPLE, DID THEY EVER

3    COME UP TO YOU AND ASK YOU QUESTIONS, MAYBE TAKE YOUR

4    PICTURE?

5    A.    WOULD YOU REPEAT YOUR QUESTION?

6    Q.    YES.  DURING THE TIME THAT YOU WERE JUMPED INTO THE

7    A-DUB, DID THE POLICE EVER MAKE CONTACT WITH YOU?  LIKE, FOR

8    EXAMPLE, SEE YOU ON THE STREET AND TAKE YOUR PICTURE, AND

9    ASK YOU IF YOU WERE A GANG MEMBER, AND ASK YOU QUESTIONS

10   LIKE THAT?

11   A.    LATER ON, YES.

12   Q.    ALL RIGHT.  AND DID YOU -- OTHER THAN THROUGH THIS

13   CASE, DID YOU EVER SPEAK WITH DETECTIVE ODAMA, THE OFFICER

14   WHO WAS SEATED HERE A COUPLE OF DAYS AGO?

15   A.    I NEVER SAW HIM BEFORE.

16   Q.    DID HE EVER TALK TO YOU WHEN YOU WERE IN A COFFEE

17   SHOP?

18   A.    I NEVER MET HIM BEFORE.  HOW CAN HE TALK TO ME?  I

19   NEVER MET HIM BEFORE.

20   Q.    AND AT SOME POINT AFTER YOU WERE FORCED INTO A-DUB,

21   DID YOU DECIDE TO CALL IT QUITS OR LEAVE THE GANG?

22   A.    YES.

23   Q.    AND WHEN WAS THAT, IF YOU REMEMBER THE DATE?

24   A.    JULY 2000.

25   Q.    AND WHY DID YOU DECIDE TO LEAVE A-DUB?

26   A.    BECAUSE MY FAMILY WAS VERY POOR.  I AM THE OLDEST

27   ONE IN THE FAMILY.  AND I WANT TO GO WORK, FIND A JOB, MAKE

28   MONEY.  SO I DON'T WANT TO GET INTO TROUBLE ANYMORE.

821

Q.    AND BACK IN JULY OF 2000, HOW OLD WERE YOU?

A.    AT THAT TIME I WAS CLOSE TO 18 YEARS OLD.

Q.    AND WERE YOU STILL GOING TO SCHOOL?

A.    NO.

Q.    AND DID YOU DECIDE TO GO TO WORK INSTEAD OF GOING TO SCHOOL?

A.    OH, YES.

Q.    AND LET'S TALK ABOUT HOW YOU CALLED IT QUITS.  DID YOU NOTIFY ANY A-DUB MEMBERS THAT YOU WERE QUITTING?

A.    I CALLED ONE OF THE MEMBERS AND I TOLD HIM THAT I DON'T WANT TO BE THE MEMBER ANYMORE.

Q.    AND WHEN YOU DID THAT, DID ANYTHING HAPPEN TO YOU?

A.    YES.

Q.    AND WHAT HAPPENED TO YOU?

A.    THERE IS A LAW IF YOU WANT TO LEAVE THE GANGS, THEN THEY HAVE TO HIT YOU BEFORE YOU LEAVE THE GROUP.

Q.    AND IS THAT CALLED BEING JUMPED OUT?

A.    YES.

Q.    AND DID YOU GET JUMPED OUT?

A.    YES.

Q.    DID THE A-DUB MEMBERS HIT YOU, PUNCH YOU, KICK YOU, DO THINGS LIKE THAT?

A.    YES.  OH, YES.

Q.    AND DID THEY TELL YOU TO DO ANYTHING IN REGARDS TO YOUR TATTOOS?

A.    YES.

Q.    AND WHAT DID THEY TELL YOU?

A.    YOU HAVE TO COVER THAT TATTOO SIGN.

Exhibit "B"

1   TESTIMONY, THERE WAS A CONFLICT BETWEEN HUY LE AND THE TRAN,

2   THE CO-DEFENDANT TRAN, WHO'S GOING TO BE THE D.A.'S WITNESS

3   IN THIS CASE.  THERE WAS A CONFLICT THEM BETWEEN THEM.

4         DUY LE, MY CLIENT, WAS ASKED TO TAKE A SIDE IN HIS

5   CONFLICT.  MY CLIENT TOOK THE SIDE OF HIS BROTHER, HUY LE,

6   WHICH CAUSED SOME TENSION OR CAUSED SOME HOSTILITY BETWEEN

7   DUY LE AND THE CO-DEFENDANT TRAN.

8         THE REASON WHY WE ARE INTRODUCING THAT EVIDENCE,

9   TO SHOW BIAS WHY MR. TRAN WOULD TESTIFY AND IMPLICATE AND

10  LIE THAT DUY LE WAS THE SHOOTER IN THIS CASE.  THAT'S,

11  BASICALLY, GIVING THE JURY A MOTIVE TO LIE.

12        THE COURT:  ALL RIGHT.  ANYTHING FURTHER ON THAT

13  ISSUE?

14        MR. DAUGHERTY:  NO, YOUR HONOR.  THE PEOPLE DON'T

15  HAVE AN OBJECTION IF THAT'S THE OFFER OF PROOF AS TO THE

16  TESTIMONY.

17        THE COURT:  THANK YOU.

18        ANY FURTHER MOTIONS IN LIMINE ON BEHALF OF THE

19  PEOPLE?

20        MR. DAUGHERTY:  NO, YOUR HONOR.

21        THE COURT:  ALL RIGHT.  LET'S TURN TO THE

22  DEFENDANT'S MOTIONS IN LIMINE.

23        MR. LOPEZ:  AND, YOUR HONOR, BEFORE I GET INTO MY

24  MOTIONS IN LIMINE, I JUST WANT TO GO BACK TO THE STIPULATION

25  OR THE AGREEMENT THAT WE HAD THAT THE TESTIMONY OF DAI

26  NGUYEN; THAT HE WOULD BE FOUND UNAVAILABLE AND HIS PRIOR

27  TESTIMONY WOULD COME IN.  I STATED I DON'T HAVE AN OBJECTION

28  TO THAT.  BUT I JUST WANTED TO QUALIFY THAT, THAT I DO PLAN

Exhibit "B"

1    COMPLETELY SIMILAR TO THE PRESENT CASE.

2          THE JANUARY 2001 SHOOTING, THERE IS, BASICALLY,

3    TWO VIETNAMESE GANGSTERS THAT ARE DRIVING IN A CAR.  VIET

4    MAI AND AN UNKNOWN DRIVER -- SPECULATION THAT IT MIGHT HAVE

5    BEEN HIS BROTHER, JOHN MAI -- PULL ALONGSIDE AS THE TWO CARS

6    ARE DRIVING.  AND VIET MAI, WHO'S A VALIDATED ASIAN WARRIOR

7    GANG MEMBER, PULLS OUT A GUN AND FIRES FOUR TO FIVE ROUNDS

8    INTO THE MOVING CAR THROUGH THE CAR.  ONE OF THEM ACTUALLY

9    GOES THROUGH ONE OF THE VICTIM'S LEGS AND CONTINUES OFF.

10   HE'S ULTIMATELY CONVICTED OR HE PLEADS GUILTY TO A 245 WITH

11   PERSONAL INFLICTION OF GREAT BODILY INJURY, AS WELL AS THE

12   GANG ENHANCEMENT.

13         VIET MAI, WHO HAD HIS FRIEND VU PHAM KILLED THE

14   YEAR EARLIER, INDICATED THAT -- WELL, THERE HE HAD -- THERE

15   WAS EVIDENCE FROM WRITINGS THAT HE HAD DONE THAT HE WAS VERY

16   UPSET AND WANTED REVENGE FOR THE FACT THAT HIS GOOD FRIEND

17   HAD BEEN KILLED THE YEAR EARLIER.

18         AND, SO, IT JUST SHOWS JUST BASED UPON THE STATUS

19   OF THE TWO GANGS, THE UNPROVOKED, VIOLENT ATTACKS AND USE OF

20   GUNS IN A WAY INTENDED TO KILL ANOTHER INDIVIDUAL WITH

21   PREMEDITATION, WITH A MOTIVATION TO DO IT JUST BASED UPON

22   THEIR GANG ALLIANCES OR THEIR GANG RIVALRIES BETWEEN ASIAN

23   WARRIORS AND V.N./V.G., THAT I BELIEVE IT'S APPROPRIATE.

24         CLEARLY, THE PEOPLE'S POSITION IS THAT THE MARCH

25   1999 IS CLEARLY MORE SIMILAR TO THE PRESENT CASE.  HOWEVER,

26   BASED UPON THE FACT THAT INTENT IS THE LOWEST NEED OF

27   SIMILARITY WITHIN THE 1101(B) CASE AUTHORITY, THE PEOPLE

28   BELIEVE THAT WE'VE MET THE BURDEN UNDER THE INTENT AND

367

Exhibit "B"

A.    I TOLD HIM TO "LEAVE IT ALONE."  I TOLD HIM:  "NOT TODAY, YOU KNOW.  JUST LEAVE IT ALONE, YOU KNOW."

AND THEN HE WON'T LISTEN, ALL RIGHT.  DUY SAY HE HAVE TO GO AND SHOOT HIM, SOMETHING LIKE THAT.

AND THEN KRISTY TOLD ME THAT "JUST LEAVE IT ALONE IF YOU DON'T LISTEN."  KRISTY TOLD ME JUST WHY DON'T I LEFT WITH HER.

Q.    DID KRISTY ASK YOU TO LEAVE WITH HER?

A.    YES.

Q.    AND WHAT DID YOU TELL HER?

A.    I TOLD HER TO LEAVE WITH HER FRIEND.

Q.    SO YOU TOLD HER TO LEAVE WITH VUONG?

A.    YES.

Q.    DID YOU TELL KRISTY THAT YOU HAD TO TAKE CARE OF AN ENEMY INSIDE?

A.    YES.

Q.    OKAY.  AND SO DID YOU HAVE FURTHER CONVERSATIONS WITH DUY ABOUT WHAT YOU WERE ABOUT TO DO?

A.    YES.

Q.    OKAY.  AND WHAT DID YOU AND DUY TALK ABOUT?

A.    TALK ABOUT WHEN -- WHEN KRISTY AND VUONG, WHEN THEY LEFT, AND THEN ME, DUY GET BACK IN THE CAR, DUY TOLD ME THAT WHEN HE DO THE SHOOTING, YOU KNOW, AND THEN I'M THE ONE BEING THE DRIVER.  SO AFTER THE SHOOTING, HE TOLD ME THE DIRECTION WHERE TO GO DROP THE GUN.

Q.    OKAY.  LET ME BACK YOU UP A LITTLE BIT.  GOING BACK TO THE SAME VIDEO, LET ME -- I'M GOING TO PLAY IT, AND I'M GOING TO STOP AT A POINT IN TIME WHEN YOU ARE OUT BY THE

371

Exhibit "B"

1    WALK OUTSIDE, DID YOU WALK NEXT TO THAI TRAN, BEHIND HIM, OR

2    IN FRONT OF HIM?

3        A.    IN FRONT OF HIM.

4        Q.    AND AS YOU WERE WALKING OUT OF THE COFFEE SHOP, WHAT

5    DID YOU DO ONCE YOU GOT OUTSIDE?

6        A.    WHEN I GOT OUTSIDE, I'M STEP ON THE SIDE.

7        Q.    YOU STEPPED TO THE SIDE?

8        A.    YEAH.

9        Q.    IS THAT A YES?

10       A.    YES.

11       Q.    OKAY.  WHICH WAY DID YOU STEP, LEFT OR RIGHT?

12       A.    RIGHT.

13       Q.    WHEN YOU CAME OUT OF THE DOOR, DID YOU SEE THE

14   DEFENDANT?

15       A.    EXCUSE ME?

16       Q.    WHEN YOU CAME OUTSIDE OF THE COFFEE SHOP, DID YOU

17   SEE THE DEFENDANT, DUY LE?

18       A.    YES.

19       Q.    AND WHERE WAS HE STANDING?

20       A.    IN FRONT OF US.

21       Q.    ABOUT HOW FAR IN FRONT OF THE DOOR WAS HE STANDING?

22       A.    FROM THE -- FROM ME TO WHERE YOU STAND (INDICATING).

23       Q.    OKAY.  IS IT AS FAR AS I'M STANDING FROM YOU, OR IS

24   IT CLOSER OR FURTHER AWAY?

25       A.    I BELIEVE I'M BACK A LITTLE BIT MORE.

26       Q.    OKAY.  IT WAS BACK A LITTLE BIT MORE?

27       A.    YES.

28              MR. DAUGHERTY:  AND, YOUR HONOR, WOULD THE

917

Exhibit "C"

1   WHAT IS IMPORTANT IS WHETHER THE

2   TESTIMONY OR ANY OTHER EVIDENCE

3   CONVINCES YOU, NOT JUST THE NUMBER OF

4   WITNESSES WHO TESTIFY ABOUT A CERTAIN

5   POINT.

6       "DURING THE TRIAL, CERTAIN EVIDENCE

7   WAS ADMITTED FOR A LIMITED PURPOSE.  YOU

8   MAY CONSIDER THAT EVIDENCE ONLY FOR THAT

9   PURPOSE AND FOR NO OTHER.

10      "YOU HAVE HEARD EYEWITNESS TESTIMONY

11  IDENTIFYING THE DEFENDANT.  AS WITH ANY

12  OTHER WITNESS, YOU MUST DECIDE WHETHER

13  AN EYEWITNESS GAVE TRUTHFUL AND ACCURATE

14  TESTIMONY.

15      "IN EVALUATING IDENTIFICATION

16  TESTIMONY, CONSIDER THE FOLLOWING

17  QUESTIONS:

18      "DID THE WITNESS KNOW OR HAVE

19  CONTACT WITH THE DEFENDANT BEFORE THE

20  EVENT?

21      "HOW WELL COULD THE WITNESS SEE THE

22  PERPETRATOR?

23      "WHAT WERE THE CIRCUMSTANCES

24  AFFECTING THE WITNESS'S ABILITY TO

25  OBSERVE, SUCH AS LIGHTING, WEATHER

26  CONDITIONS, OBSTRUCTIONS, DISTANCE, AND

27  DURATION OF OBSERVATION?

28      "HOW CLOSELY WAS THE WITNESS PAYING

924

Exhibit "C"

1    OF THAT EVIDENCE.  YOU MAY CONSIDER

2    THOSE STATEMENTS ONLY TO EVALUATE THE

3    EXPERT'S OPINION.  DO NOT CONSIDER THOSE

4    STATEMENTS AS PROOF THAT THE INFORMATION

5    CONTAINED IN THE STATEMENTS IS TRUE.

6        "THE PEOPLE ARE NOT REQUIRED TO

7    PROVE THAT THE DEFENDANT HAD A MOTIVE TO

8    COMMIT ANY OF THE CRIMES CHARGED.  IN

9    REACHING YOUR VERDICT YOU MAY, HOWEVER,

10    CONSIDER WHETHER THE DEFENDANT HAD A

11    MOTIVE.

12        "HAVING A MOTIVE MAY BE A FACTOR

13    TENDING TO SHOW THAT THE DEFENDANT IS

14    GUILTY.  NOT HAVING A MOTIVE MAY BE A

15    FACTOR TENDING TO SHOW THE DEFENDANT IS

16    NOT GUILTY.

17        "IF THE DEFENDANT FLED IMMEDIATELY

18    AFTER THE CRIME WAS COMMITTED AFTER HE

19    WAS ACCUSED OF COMMITTING THE CRIME,

20    THAT CONDUCT MAY SHOW THAT HE WAS AWARE

21    OF HIS GUILT.  IF YOU CONCLUDE THAT THE

22    DEFENDANT FLED, IT IS UP TO YOU TO

23    DECIDE THE MEANING AND IMPORTANCE OF

24    THAT CONDUCT.  HOWEVER, EVIDENCE THAT

25    THE DEFENDANT FLED CANNOT PROVE GUILT BY

26    ITSELF.

27        "THE PEOPLE PRESENTED EVIDENCE THAT

28    VU TRUONG COMMITTED ANOTHER OFFENSE THAT

Exhibit "C"

1    WAS NOT CHARGED IN THIS CASE.

2        "YOU MAY CONSIDER THIS EVIDENCE ONLY

3    IF THE PEOPLE HAVE PROVED BY A

4    PREPONDERANCE OF THE EVIDENCE THAT VU

5    TRUONG IN FACT COMMITTED THE UNCHARGED

6    OFFENSE.  PROOF BY A PREPONDERANCE OF

7    THE EVIDENCE IS A DIFFERENT BURDEN OF

8    PROOF THAN PROOF BEYOND A REASONABLE

9    DOUBT.  A FACT IS PROVED BY A

10    PREPONDERANCE OF THE EVIDENCE IF YOU

11    CONCLUDE THAT IT IS MORE LIKELY THAN NOT

12    THAT THE FACT IS TRUE.

13        "IF THE PEOPLE HAVE NOT MET THIS

14    BURDEN, YOU MUST DISREGARD THIS EVIDENCE

15    ENTIRELY.

16        "IF YOU DECIDE THAT VU TRUONG

17    COMMITTED THE UNCHARGED OFFENSE, YOU

18    MAY, BUT ARE NOT REQUIRED TO, CONSIDER

19    THAT EVIDENCE FOR THE LIMITED PURPOSE OF

20    DECIDING WHETHER OR NOT:

21        "THE DEFENDANT ACTED WITH THE INTENT

22    TO KILL;

23        "THE DEFENDANT HAD A MOTIVE TO

24    COMMIT THE OFFENSES ALLEGED IN THIS

25    CASE;

26        "THE DEFENDANT ACTED WILLFULLY, AND

27    WITH DELIBERATION AND PREMEDITATION.

28        "IN EVALUATING THIS EVIDENCE,

CONSIDER THE SIMILARITIES OR LACK OF
SIMILARITIES BETWEEN THE UNCHARGED
OFFENSES AND ACTS AND THE CHARGED
OFFENSES.

"DO NOT CONSIDER THIS EVIDENCE FOR
ANY OTHER PURPOSE EXCEPT FOR THE LIMITED
PURPOSE OF DETERMINING THE DEFENDANT'S
CREDIBILITY.

"DO NOT CONCLUDE FROM THIS EVIDENCE
THAT THE DEFENDANT HAS A BAD CHARACTER
OR IS DISPOSED TO COMMIT CRIME.

"IF YOU CONCLUDE THAT VU TRUONG
COMMITTED THE UNCHARGED OFFENSE, THAT
CONCLUSION IS ONLY ONE FACTOR TO
CONSIDER ALONG WITH ALL THE OTHER
EVIDENCE.  IT IS NOT SUFFICIENT BY
ITSELF TO PROVE THAT THE DEFENDANT IS
GUILTY OF ATTEMPTED MURDER AND ASSAULT
WITH A SEMIAUTOMATIC FIREARM.  THE
PEOPLE MUST STILL PROVE EACH ELEMENT OF
EVERY CHARGE BEYOND A REASONABLE DOUBT.

"A PERSON MAY BE GUILTY OF A CRIME
IN TWO WAYS:

"ONE, HE OR SHE MAY HAVE DIRECTLY
COMMITTED THE CRIME;

"TWO, HE OR SHE MAY HAVE AIDED AND
ABETTED SOMEONE ELSE WHO COMMITTED THE
CRIME.

Exhibit "C"

941

Exhibit "C"

THE ALLEGATION HAS NOT BEEN PROVED.

"YOU MUST CONSIDER EVIDENCE OF GANG
ACTIVITY ONLY FOR THE LIMITED PURPOSE OF
DECIDING WHETHER THE DEFENDANT ACTED
WITH THE INTENT, PURPOSE, AND KNOWLEDGE
THAT ARE REQUIRED TO PROVE THE
GANG-RELATED ENHANCEMENTS CHARGED;

"OR

"THE DEFENDANT HAD A MOTIVE TO
COMMIT THE CRIMES CHARGED.

"THE DEFENDANT ACTED WITH MALICE OR
PREMEDITATION.

"YOU MAY ALSO CONSIDER THIS EVIDENCE
WHEN YOU EVALUATE THE CREDIBILITY OR
BELIEVABILITY OF A WITNESS AND WHEN YOU
CONSIDER THE FACTS AND INFORMATION
RELIED ON BY AN EXPERT WITNESS IN
REACHING HIS OR HER OPINION.

"YOU MAY NOT CONSIDER THIS EVIDENCE
FOR ANY OTHER PURPOSE.  YOU MAY NOT
CONCLUDE FROM THIS EVIDENCE THAT THE
DEFENDANT IS A PERSON OF BAD CHARACTER
OR THAT HE HAS A DISPOSITION TO COMMIT
CRIME.

"IF YOU FIND THE DEFENDANT GUILTY OF
THE CRIME CHARGED IN COUNT TWO, YOU MUST
THEN DECIDE WHETHER THE PEOPLE HAVE
PROVED THE ADDITIONAL ALLEGATION THAT

**SJPD** **REPORT**

SAN JOSE POLICE DEPARTMENT
201 W. Mission Street
San Jose, CA 95110  277-4261

| | CASE NO. |
|---|---|
| | **011170690** |

| REPORT TYPE  ☐ NARRATIVE  ☑ SUPPLEMENTAL | VICTIM LAST, First, Mid. |
|---|---|
| **ATTEMPTED MURDER** | **TRAN, THAI** |

| SUSPECT LAST, First, Mid. | SUSPECT ADDRESS                    CITY/ZIP |
|---|---|
| **TRAN, TUYEN** | **1805 QUIMBY RD, SAN JOSE** |

| PROPERTY (and/or NARRATIVE) | | | | |
|---|---|---|---|---|
| ITEM#   QNTY | ITEM TYPE BRAND MODEL # SIZE COLOR MARKS ETC. | | SERIAL #   VALUE | |

**Narrative:** On 110201 at approx. 1045hrs I was working as an investigation in the Gang Investigation Unit. I was contacted by a Thien Hoang 8-8-80 who stated he was at the café with Vuong and Kristy day the shooting occurred. I conducted the interview at the witness center at the police station.

**Statement of Witness Thien Hoang (W):** (W)Hoang stated he had gone to the Thao Café to meet his friend Vuong and Vuong's friend Kristy. He had went to the café with his friend Kathy and they met Vuong and Kristy there. When they got to the café Vuong and Kristy were sitting at a table with two other males. He couldn't remember their names but knew one of the subjects was Kristy's boyfriend. He described him as tall with a tattoo on one of his arms. The other one was shorter and that was the only description he could provide. After they got to the café they sat down with the other four at one table. They were only there for about 15 minutes when Vuong, Kristy and the other two decided they wanted to leave. Kathy and he decided they wanted to stay awhile longer. After they left Kathy and he decided they did not want to stay so they left. They got into the car they arrived in and were just left the parking lot when they saw everyone trying to get out of the café. They had the music on real loud and said he did not hear the shooting.

Only later did he find that there was a shooting at the café that day. He did not see Vuong, Kristy and their two friends since that day. He stated that he was not sure if he could identify the two friends if he saw them again.

I showed him the photo lineup with Duy Le and Tuyen Tran. Before I showed him the lineups I admonished him. He looked at both lineups and could not identify anybody. He stated he had only seen the two friends for a short time and that was 6-7 months ago.

(W)Hoang told me that he would contact Kathy and have her contact me.

Later in the day I was contacted by Kathy whose real name was Nuong Truong. She was unable to come to the police station so I conducted the interview over the phone.

**Statement of Witness Nuong "Kathy" Truong (W):** (W)Tuong stated she had gone to the Thao Café with her friend Thien. They were going to meet their friend Vuong and some of Vuong's friends at the café. By the time the got to the Thao, Vuong and his friends were already sitting at a table inside of the café. Thien and she sat down with them. She already knew Vuong for about a year but was introduced to the others that day. She could not remember any of their names and did not know if she could identify any of them if she saw them again. They had saw down for only 15-20 minutes when they (Vuong and his friends) decided they wanted to leave. Thien and she were only there for a short time so the wanted to stay. When the others left, they only sat for a couple more minutes and also left the café. they were just leaving the parking lot when they saw everybody in the café running to their cars. She stated she did not hear any gunshots because the music in the car was to loud.

| OFFICER'S NAME/BADGE | DAYS OFF/SHIFT | SUPERVISOR |
|---|---|---|
| ODAMA #3136 | 2ND/SSM | |

1 OF 2

(521)

Duy Le. T-75196
Centinella State Prison
P.0 Box 921
Imperial, CA 92251



pro se

United States District Court
Northern District
450 Golden Gate Avenue
16th Floor #1111
San Francisco, CA. 94102

CONFIDENTIAL
LEGAL MAIL

6/21/08

12 X 15½